**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**PATRICIA L. VARELA,**

**Plaintiff,**

**vs.** **Civil No. 02-370 RLP**

**JO ANNE B. BARNHART, Commissioner of the Social Security Administration,**

**Defendant.**

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO REVERSE OR REMAND ADMINISTRATIVE AGENCY DECISION**

1. Plaintiff, Patricia L. Varela ("Plaintiff" herein) challenges the decision of the Commissioner of Social Security denying her applications for disability income benefits ("DIB" herein) and supplemental security income ("SSI" herein). For the reasons stated herein, I find that Plaintiff's Motion is not well taken and is denied, and that the decision of the Commissioner denying Plaintiff's applications for benefits is affirmed.

I.

2. Plaintiff filed applications for DIB and SSI on February 9, 1999, claiming an inability to work since October 15, 1996, because of abdominal problems, anemia, gall stones, hereditary cirrhosis, pain, weakness and dizziness. (Tr. 49). Plaintiff began using/abusing alcohol at age 17. (Tr. 83). Prior to filing her applications for benefits, she had developed abnormal liver function related to alcohol use (Tr. 144, 94), enlarged liver (93), cirrhosis of the liver with upper GI bleed related to alcoholism (Tr. 84, 87-88), and several episodes of bleeding esophogeal varices successfully treated with sclerotherapy and medication. (Tr. 80, 137, 136, 92, 133, 86-87, 113, 112, 111, 127-128, 54, 213). Plaintiff was cautioned not to consume alcohol (Tr. 141-142), but continued to do so,

minimizing her alcohol intake. (Tr. 142, 135, 133, 118). In November 1998 a physician's assistant at Rodeo Family Medicine wrote a letter stating that Plaintiff was "currently unable to work due to her health condition." (Tr 126). The letter contains no objective medical findings.

3. Plaintiff was evaluated by a neurologist in April 1999 for complaints of pain and weakness. (Tr. 151-152,146). Her physical exam was essentially normal and MRI of the spine disclosed revealed mild spondylitic changes with no evidence of cord abnormality or compression.

4. On September 14, 1999, Plaintiff was seen at Women's Health Services, complaining headache for the past two weeks, and neck pain, dizziness for the past two months, weakness and numbness of the lower extremities for the past year and depression. She stated that she had been sober for the past two years. (Tr. 172-173). Shortly thereafter Plaintiff was admitted to the hospital for GI hemorrhage felt to be "most probably variceal, with noncompliance with follow-up sclerotherapies." (Tr. 214). Erosion proximal to the pyloric sphincter and a small varix below the gastroesophageal junction were found on endoscopy, with no active bleeding. Plaintiff was treated with blood transfusion and prilosec, a medication which inhibits gastric acid secretion (Tr. 213-215, 180; 1998 Physicians' Desk Reference at 529-532). By November 4, 1999, she indicated that she was doing well. (Tr. 180).

5. Plaintiff began drinking prior to January 10, 2000, and was hospitalized for three days for a GI bleed.[1] (Tr. 182). She was again cautioned not to drink and to continue to take prilosec. (Id.). She was hospitalized from February 2 to February 5, 2000, with severe acute upper GI hemorrhage and resultant anemia, with chronic liver disease and chronic alcoholism. She was intoxicated on

---

[1] Records of this hospitalization are not contained in the administrative record. From other records, it appears that Plaintiff was hospitalized at the University Hospital of New Mexico, and may have been treated with sclerotherapy during that admission. (Tr.207).

admission. Bleeding esphageal varices were found on endoscopy and treated with sclerotherapy. When discharged she was advised to have follow-up sclerotherapy and to take antenolol to prevent further esophageal variceal bleeding. (Tr. 188-207).

6. Plaintiff was hospitalized on May 20, 2000, following an episode of binge drinking. (Tr. 229-246). On admission she was suffering from encephalopathy and a significant GI bleed. (Tr. 243-244). She denied having consumed alcohol for four years (Tr. 237) but her "family (stated) that she drinks in secret so it is difficult to track her actual consumption." (Tr. 229). On discharge she was instructed to absolutely avoid alcohol. (Tr. 246). By June 23, 2000, she advised her primary care doctor that she was feeling good except for cold symptoms. (183-184). On August 7, 2000, she was treated for headache which had been present for two weeks. Headaches were still present ten days later, but Plaintiff admitted that she had not taken prescription medication as directed. She was advised to use the medication and to go to the ER if headaches continued without relief. (Tr. 184-185). There is no evidence of any subsequent admission to the ER for treatment of headache complaints, or renewed complaints of headache made to Plaintiff's primary care doctor.

7. Plaintiff was evaluated by Louis Wynne, PhD, at her attorney's request in late August 2000. Dr. Wynne reviewed records, took a detailed history, conducted a mental status exam and administered the Shipley Scale. He diagnosed Major Depression, recurrent, moderate and alcohol dependence. He assigned a global assessment of functioning of 48 (serious), and felt that her depression had probably been present since her teen years. (Tr. 168-171).

8. Plaintiff's applications were denied initially and on reconsideration. A hearing before an ALJ was conducted on September 22, 2000. Plaintiff was represented by counsel at this hearing.

9. Plaintiff testified that she had lost her last job in 1996 because of depression and alcoholism

(Tr. 292-293). She stated that she had been sober since May 2000, but still experienced bloody stools on a monthly basis (Tr. 290-291), that sitting was painful(Tr. 295), and that she had (adverse) reactions to some of her medications.[2] (Tr. 296, 301). She also testified that she spent four days a week in bed with a headache, weakness and dizziness (Tr. 294-295), but that medication had reduced migraine headaches to twice a week. (Tr. 299).

10. The ALJ issued his opinion denying Plaintiff's claim on December 8, 2000. He found that she had a severe impairment or combination of impairments as of June 1998 which met the requirements of Listing §5.05[3] as adopted via Listing§12.09[4]:

> Ms. Varela has been diagnosed as displaying alcoholism, which has caused renal failure with acidosis, esophageal varices, and for a short period alcoholic encephalopathy . . . Her impairments satisfy the requirements of the listings. However, under the provisions of Pub. L. 104-121 Ms. Varela is not entitled to benefits if alcoholism is material to this disability. The remainder of this decision will address the questions of whether Ms. Varela would continue to be under a disability if she refrained from abusing alcohol. (Tr. 14).

11. The ALJ then determined that Plaintiff's physical and mental impairments would not equal a listing if she refrained from alcohol abuse, listing the following factors, which are supported by the record:

---

[2]Plaintiff testified that she was taking medication for constipation, migraine headaches (identified in the records of her primary care provider as ergotamine, (Tr. 185), blood pressure medication (Propranolol) and thyroid medication (Levothroid). (Tr. 297). In describing her adverse reactions to medication Plaintiff stated that some medication didn't agree with her system, so that although she wasn't drinking, she still felt ill. (Tr. 301).

[3] Listing §5.05 is titled *Chronic liver disease (e.g., portal, post-necrotic, or biliary cirrhosis; chronic active hepatitis; Wilson's disease),* and describes six manifestations of liver disease which provide the requisite severity for a finding of *per se* disability. The medical records indicate following episodes of drinking, Plaintiff evidenced medical findings applicable to subparagraph A, Esophaeal varices (demonstrated by X-ray or endoscopy) with a documented history of massive hemorrhage attributable to these varices.

[4]*Substance Addition Disorders.*

1) All of Plaintiff's recent hospitalizations were associated with alcohol abuse.

2) Plaintiff was referred to alcohol rehabilitation after her last hospitalization (May 2000), and she testified that she had not had any alcohol since that time. However, the record shows no rehabilitation treatment and Plaintiff has minimized her use of alcohol in the past.

3) Based on a one-time evaluation, Dr. Wynne indicated that Plaintiff's depression predated her alcoholism. This examination is not entirely reliable. The record establishes that while Plaintiff may have some underlying depression, use of alcohol exacerbates her depressive symptoms. None of her treating doctors mention depressive symptoms in their medical assessments. Plaintiff has not sought or received treatment for depression, apart from some informal counseling during her divorce.[5]

4) Plaintiff's description of her subjective complaints and functional limitations, including pain and fatigue is not entirely supported by the record.

   a. Plaintiff claims to have bloody stools and bleeding three days a month and bleeding in her chest since stopping drinking in May 2000, but the record contains no evidence of treatment for this condition.

   b. Plaintiff testified that she lost her last job because of depression and alcoholism (See Tr. 293); her employer stated she was terminated because of missed deadlines (See Tr. 164).

   c. Plaintiff claims to have disabling migraine headaches. Although she has a history of migraines, she received little treatment for this condition during the times at issue. She testified that she was bedridden for four days a week by migraines, but never made this complaint to her doctors.

   d. Plaintiff takes medications for thyroid and gastrointestinal problems, without

[5]The ALJ cited to records of Plaintiff's treating physician from November 17 1997-February 17, 1999 (Tr. 114-145), and to hospitalization on June 17, 1998 hospitalization (Tr. 80-85), September 20-21,1999 (Tr. 209-228), February 2-5, 2000 (Tr. 188-208), and May 20-29, 2000 (Tr. 228-246). Plaintiff's former employer, a clinical social worker, indicated that he had seen Plaintiff for counseling on four occasions between June 1995 and January 1997 for depression related to her divorce. (Tr. 164). Plaintiff denied depression on August 12, 1998 (Tr. 135). Her care provider noted her "depressive state" on September 14, 1999, but indicated that this was likely from lack of treatment of a thyroid condition over the prior two years. (Tr. 172). A past history of depression was noted during Plaintiff's September 20, 1999 hospitalization, but depression was not included in her current assessment. (Tr. 213-215).

side effects.[6]

5) Little weight was given to the opinion of the physician's assistant who indicated Plaintiff was unable to work in November 1998. The physician's assistant was not a qualified health care provider, did not support her opinion with objective evidence and did not address Plaintiff's complaints in the absence of alcoholism.

(Tr. 14-15).

12. On the same day that the ALJ issued his opinion, Plaintiff was admitted to the hospital with a severe GI bleed. (Tr. 260-281). Only a portion of the records related to this hospitalization were submitted to the Appeals Council.[7] Plaintiff and her boyfriend denied that she had been drinking (Tr. 264), and a blood test taken two days after admission did not disclose the present of any alcohol. (Tr. 271). Endoscopy revealed erosive esophagitis, GE junction and gastric cardia varices but no esophageal varices. (Tr. 281). The Appeals Council considered this evidence, but found that it did not provide a basis for changing the ALJ's decision. (Tr. 6-7).

II.

13. The court reviews the Commissioner's decision to determine whether the records contain substantial evidence to support the findings, and to determine whether the correct legal standards were applied.[8] Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "[9]

---

[6]The ALJ cited to Tr. 54, a report submitted by Plaintiff in February 1999. In this report Plaintiff stated she was taking Prevacid, Propranolol, Levothoird and Ambien, without any side effects.

[7]According to lab reports, Plaintiff was hospitalized for at least five days. The records submitted contain only the registration record, ER record, admission history and physical, lab, radiology and ECG reports and report of endoscopy.

[8]Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1028 (10th Cir.1994).

[9] Soliz v. Chater, 82 F.3d 373, 375 (10th Cir.1996) (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)).

14. The duty to assess whether substantial evidence exists "is not merely a quantitative exercise. Evidence is not substantial 'if it is overwhelmed by other evidence--particularly certain types of evidence (e.g., that offered by treating physicians) --or if it really constitutes not evidence but mere conclusion.' "[10] The court does not reweigh the evidence or substitute its judgment for the Commissioner's[11]. The court typically defers to the ALJ on issues of witness credibility.[12] The record will be examined as a whole, including whatever fairly detracts from the weight of the Commissioner's decision, to determine whether the substantiality of the evidence tests has been met.[13]

III.

15. Plaintiff raises three issues: Whether the ALJ failed to properly apply the Contract with America Advancement Act of 1996 in evaluating the impact of her alcoholism on her disability; whether the ALJ substituted his opinion for that of medical sources, and whether the ALJ failed to properly develop the record.

A. Whether the ALJ failed to properly apply the Contract with America Advancement Act of 1996.

16. Pursuant to the Contract with America Advancement Act, the Social Security Act proscribes considering a person disabled if alcohol or drug abuse would be "a contributing factor material to the Commissioner's determination that the individual is disabled."[14] "Under both §20 C.F.R.

---

[10] Gossett v. Bowen, 862 F.2d 802, 805 (10th Cir. 1988), quoting Fulton v. Heckler, 760 F.2d 1052, 1055 (10th Cir. 1985).

[11] Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994).

[12] Hamilton v. Secretary of Health & Human Services, 961 F.2d 1495, 1498 (10th Cir. 1992).

[13] Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).

[14] §42 U.S.C. 423(d)(2)(C).

404.1535 (disability) and §20 C.F.R. 416.935 (supplemental security income), the relevant inquiry is 'whether [the Commissioner] would still find you disabled if you stopped using drugs or alcohol.' "[15] A claimant has the burden of proving that her substance dependency is not a contributing factor material to her claimed disability.[16] I find that the substantial evidence supports that ALJ's finding that Plaintiff's alcohol abuse was material to her disability. The record clearly establishes that as of the date of the administrative hearing, Plaintiff's episodes of gastro-intestinal bleeding were brought about by alcohol abuse.

17. Plaintiff argues that her December 20, 2000, hospitalization establishes the presence of Listing level impairment in the absence of alcohol use. [Docket No. 11, at 7]. The records of that admission, however, did not document medical findings necessary for *per se* disability under Listing §5.05.[17]

B. Whether the ALJ substituted his opinion for that of treating medical sources.

18. Plaintiff contends that the ALJ improperly substituted his opinion for that of treating medical sources on the issue of whether Plaintiff's alcohol use/abuse was material to her disability, by disregarding; 1) records of her December 8, 2000, hospitalization at which time her alcohol use was described as remote and non-concurrent; 2) Dr. Wynne's evaluation which indicated that Plaintiff's alcohol use/abuse stemmed from childhood sexual and parental abuse; and 3) the November 18, 1998 opinion of a treating physician's assistant, Laurie Daggett, that Plaintiff was unable to work. [Docket

---

[15]Estes v. Barnhart, 275 F.3d 722, 724-25 (8th Cir.2002); Pettit v. Apfel, 218 F.3d 901, 903 (8th Cir.2000).

[16]Id. at 725 (citing Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir.2000)).

[17]No esphageal varices were found on endoscopy (Tr. 281); a shunt operation was not performed (Tr. 281); Plaintiff's serum bilirubin was not elevated to the level required by Listing 5.05 (Tr. 268); there was no evidence of ascites, encephalopathy or liver biopsy.

No. 11 at 8-9].

19. The ALJ did not discuss the records of Plaintiff's December 8, 2000, hospitalization. This is understandable, since his opinion was issued the day she was admitted to the hospital. The Appeals Council considered these records[18] and determined that they did not provide a basis for altering the ALJ's decision. For the reasons set forth in ¶ 16-17, supra, I find that the Appeals Council conclusion is supported by the substantial evidence.

20. The ALJ must give substantial weight to the testimony of a claimant's treating physician unless good cause is shown to the contrary; the report of a treating physician may be rejected if it is brief, conclusory and unsupported by medical evidence.[19] Dr. Wynne was not a treating physician. The ALJ discussed his opinion and rejected it for clearly stated, acceptable reasons. (Tr. 14, see also ¶ 11 supra). Ms. Daggett wrote a letter that stated "Patricia Varela, dob 5/29/60, is a patient of our who currently is unable to work due to her health condition.." (Tr. 126). Even if Ms. Daggett were a treating physician, her opinion as to disability would not be binding.[20] The ALJ permissibly gave little weight to Ms. Daggett's opinion because it was "unsupported by objective medical evidence and not address [Plaintiff's] complaints in the absence of alcoholism." (Tr. 15).

C. Whether the ALJ failed to develop the record.

21. Plaintiff argues that the ALJ failed to make inquiries of treating medical sources as to whether

---

[18] O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994).

[19] Frey v. Bowen, 816 F.2d 508,513 (10th Cir. 1987).

[20] Castellano v. Secretary of Health and Human Services, 26 F.3d 1017, 1029 (10th Cir. 1994); citing 20 C.F.R. §404.1527(a)(2), 404.1527(d)(2). (The opinion of a treating physician that a claimant is disabled is not dispositive; the final responsibility for determining the ultimate issue of disability is reserved to the Commissioner.

earlier use or non-use of alcohol would have made any difference in light of Plaintiff's irreparable liver damage. Plaintiff has the burden of proof of the issue of whether her impairments would have been disabling had she stopped using alcohol.[21] At the administrative hearing, Plaintiff's counsel represented that the evidence before the ALJ was complete. (Tr. 290). The ALJ was entitled to rely in this representation.[22] The regulations expressly authorize a claimant to submit new and material evidence to the Appeals Council.[23] Plaintiff submitted additional records to the Appeals Council, but did not submit any medical records or opinion evidence relative to the impact of Plaintiff's liver disease had her drinking stopped at an earlier date.

22. An ALJ is required to obtain additional medical evidence if the existing medical evidence is not a sufficient basis for a decision.[24] An ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision.[25] The record as it existed before the ALJ, and as supplemented before the Appeals Council, provides substantial evidence to support the ALJ's determination.

---

[21] Brown v. Apfel, 192 F.3d 429, 498 (5th Cir. 1999); Middlestede v. Apfel, 204 F.3d 847, 852 (9th Cir. 2000); Pettit v. Apfel, 218 F.3d 901, 903 (8th Cir. 2000); Doughty v. Apfel, 245 F.3d 1274, 1280 (11th Cir. 2001).

[22] Cf. Glenn v. Secretary of Health and Human Services, 814 F.2d 387, 391 (7th Cir.1987)("When an applicant for social security benefits is represented by counsel the administrative law judge is entitled to assume that the applicant is making his [or her] strongest case for benefits.)

[23] 20 C.F.R. § 404.970(b).

[24] 20 C.F.R. §§404.1527(c)(3), 416.927(c)(3).

[25] See e.g., 20 C.F.R. §§404.1527 (c)(4), 416.927(c)(4).

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse or Remand [Docket No. 10] is denied.

**Richard L. Puglisi**
**United States Magistrate Judge**
**(sitting by designation)**